ISAIAH WADDELL AND Z. C. MILES, UNDER THE NAME OF WAD-
DELL & MILES, *vs.* THE STEAMBOAT "DAISY," &c.

MOTION to dismiss.

When an appeal is taken, and allowed, from a definitive sentence in ad-
miralty, at the time of its entry, and time is allowed, in which to per-
fect the appeal, no written petition for an appeal, or for apostles, is nec-
essary, under the admiralty rules, nor are letters dismissory of the cause.

The practice of the courts of this country, and of this Court, has made the
filing of the appellatory libel, known to the *civil law*, unnecessary.

An appeal, having been taken, and allowed, at the entry of sentence, and
perfected within the time allowed by the Court, meets all the require-
ments of the civil law in those respects.

No monition issuing, out of this Court to the trial Court, to transmit the
cause to this Court is required, and more especially is that the case,
when no unwillingness on the part of the judge of the lower Court is
shown.

As to whether filing of brief, without saving the right to raise the last ques-
tion, is a waiver of it, not passed upon.

OPINION on case.

Where it appears that a person has a contract for the furnishing of the
machinery for a vessel, and the materials of a third person, who had
full knowledge, were used in the construction of such machinery, and
it not appearing that the owner of the steam vessel, or his agents,
authorized the using of said materials, the steamer is not liable for the
same.

In determining whether a contract, for the furnishing of materials, in the
construction of a vessel, is a maritime contract, the test is, not the *loca-
tion* of the hull, as to being on the ways or afloat, but rather, was she so
far finished, at the time, that anything further done upon or about
her, *would in its nature* be maritime.

The libel averring that the material was used in *the building* of the vessel,
demonstrates that the contract was non-maritime, and that this Court
is without jurisdiction *in rem.*

Doubt expressed, as to the power of our Legislature, to confer jurisdiction
upon the Courts to entertain an *in rem* proceeding in Admiralty, for
materials furnished in the building of a vessel.

It is a settled rule, in the construction of lien laws, that the Legislature will
not be presumed to have provided a lien for the claims of persons, not
in privity with the owner of the property against which the lien is

sought, unless such provision is made in unequivocal language; and such intention does not appear in the language of our lien law, but a fair construction of the language employed, shows the legislative intention was to the contrary.

COSTS.

Section 823, R. S., and those following it, determine the tariff of fees for clerks in our Territorial Courts in Admiralty suits.

Appeal from Third Judicial District, holding terms at Seattle.

*Burke & Rasin* and *C. H. Hanford* for appellants and libellants.

The "Daisy" was afloat when the materials were furnished. The implied agreement to pay for them was in the nature of a maritime contract. *Eliza Ladd,* 3 Sawyer, 419; *The Revenue Cutter No.* 2, 4 id. 143. Such contract will be enforced *in rem* if the statute of the Territory creates a lien in favor of libellants. *The Mary Gratwick,* 2 Sawyer, 342; *The John Farron,* 14 Blatchford, 24; *The Brig Draco,* 2 Sumner, 178; *The Lottawanna,* 21 Wallace, 558; Laws W. T., 1877, p. 216, subdiv. 3; *Francis* v. *Barque Harrison,* 2 Gallison, 475; 1 Sumner, 73; 1 Paine, 620; Benedict's Admiralty, Sec 267. The articles furnished entered into and gave value to the vessel, and according to the policy of the maritime law a lien attaches. *The Cabarga,* 3 Blatchford, 45; *The Phebe,* 1 Ware, 263 and 270–1.

The fact of a contract between the owner and contractor—though known to libellants—did not deprive them of their lien. *The Monsoon,* 1 Sprague, 37; *Francis, et al.* v. *Barque Harrison,* 1 Sawyer, 353; 1 Ware, 263; 1 Brown, 537.

*Struve, Haines & Leary* for respondent and appellee.

Under the Admiralty law, as administered in the United States, no lien attaches to a vessel for repairs or supplies furnished in the home port. *McGuire* v. *Card,* 21 Howard, 251; *The Edith,* 4 Otto, 520.

What must be shown to give a lien on vessels for supplies or repairs. *Pratt* v. *Reed,* 19 Howard, 359; *Thomas* v. *Osborn,* id. 22; *The Sarah Starr,* 1 Sprague, 455.

The change claimed to be effected by the statute, should be made clearly to appear before the Court will adopt a construc-

tion at variance with the fundamental law. Sedgwick on Construction Statutory and Constitutional Law (2d ed.), p. 209, note a, and p. 224; id. p. 248, Sec. 10; id. 259, note a; 17 Vermont, 479, 487.

Sub-contractors, in the absence of an express statute, have no lien upon the vessel. *Smith* v. *Steamer Eastern Railroad,* Curtis C. C. 253; *The Whitaker,* 1 Sprague, 230; *Hubbell* v. *Dennison,* 20 Wendell, 179; *Childs* v. *Steamboat Brunette,* 19 Mo. 518; 6 Blackford (Ind.), 148; 51 Texas, 395; 12 Illinois, 300.

Liens upon vessels discourage commerce and are not encouraged. They are not to be extended by construction. *Peoples Ferry Co.* v. *Beers, et. al.,* 20 Howard, 401; *Pratt, et al.,* v. *Reed,* 19 id. 361; *Vandemeter* v. *Mills,* id. 90; *The Joseph Grant,* 1 Bissell, 196.

The Territorial Legislature cannot confer Admiralty jurisdiction on the District Courts. Neither can it create a maritime lien or make a lien enforceable in admiralty unless it arises from a maritime contract. Article III, Sec. 2, Federal Constitution; R. S. U. S., Sec. 563, subdiv. 8; Organic Act W. T., Sec. 9; *The Thomas Jefferson,* 10 Wheaton, 428; *The Orleans,* 11 Peters, 175; 4 Wallace, 644, 555; 7 id. 644; 21 id. 556, 580; 1 Black, 522; 2 id. 581.

The twelfth admiralty rule, of the Supreme Court of the United States, should not be so extended, by construction, as to embrace material and labor used in the *building* of a vessel. Sedgwick Statutory and Constitutional Law, pp. 360–1; *Sandeman* v. *Breach,* Barnwell & Cresswell, 96; 34 Georgia, 184; 21 Wisconsin, 496; 30 Mo. 376; 49 id. 559; 35 Miss. 25.

The contract, in the case at bar, is not maritime in its nature, and a lien created by the local law, for services or materials under such a contract, is not enforceable in admiralty. *Rooch, et al.* v. *Chapman, et al.,* 22 Howard, 129; *The Belfast,* 7 Wallace, 646; *Edwards* v. *Elliot,* 21 Wallace, 552; *Shepperd* v. *Steel,* 43 New York, 56; 26 Wisconsin, 488; 23 Howard, 494; 1 Brown's Admiralty Reports, 495; 100 Mass. 409; 23 Ohio St. 565; 2 Clifford, 38; 29 Indiana, 279; 34 id. 448; 7 Am. Reports, 229.

*Opinion by Hoyt, Associate Justice.*

Opinion on motion to dismiss.

The attorneys for the respondent, having reserved the right so to do in their brief, now move the Court to dismiss the appeal herein, for the reasons stated in their brief as follows:

1st. No petition for appeal, no petition for apostles and no letters dismissory, signed by the judge of the Court below, have been filed, and none are called for by the notice of appeal.

2nd. No appellatory libel has been filed.

3d. The appeal was not taken or perfected at the time, or at the same term, the decree was entered, or at any regular term of the Court entering said decree.

They also now urge the further point, that no monition issued out of this Court to the Court below to transmit the proceedings to this Court.

The transcript in the case shows that the appeal was from a definitive sentence, and that it was taken and allowed at the time of the entry of said sentence, and that the Court then allowed time, in which to perfect the appeal, and this was, in our opinion, such a compliance with the rules governing appeals in admiralty, as to fully meet the objections thereto raised by the first point above quoted, for we are of the opinion that no written petition, for an appeal from a definitive sentence, or for apostles is required, and that in view of the fact (as will be hereinafter stated), that no action of the appellatory Court is required to perfect the appeal, the action of the Court below, in allowing the appeal, and in granting time in which to perfect the same, was sufficient letters dismissory of the cause.

As to the second point, we are of the opinion that the rules of the Civil Law have been so far modified in this country and in this Court, by a uniform current of practice, as to make the filing of an appellatory libel in this Court unnecessary.

The appeal having been taken, and allowed at the time of sentence, and having been perfected within the time then fixed by the Court, it was sufficient in our opinion under the rules, as interpreted by this Court, in the case of *Brown, et al.* v. *The*

*Steamer Zephyr*, to meet the objections raised by the third point above stated.

It only remains to discuss the point now raised for the first time (the same not having been reserved in the briefs on file) as to the necessity of a monition issuing out of this court to the Court below and specially reserving the point, as to whether said objection was taken in time, we would say that we are of the opinion that no monition was necessary, as there has been a uniform practice in this Court to take jurisdiction of cases in admiralty sent up on appeal, without the intervention of such monition; and such has been the practice of the Supreme Court of the United States as to appeals from this Court. The appeal, having been perfected by the filing of a bond properly approved, and the Court having, in lieu of further apostles, directed the entire record to be sent up, was in our opinion sufficient to divest said Court of the case, and upon the filing of said record here, this court acquired jurisdiction therein.

The case is not presented, of a refusal on the part of the Court below to direct the record to be sent up, and we do not therefore now assume to decide as to what would be the correct practice in such a contingeny.

It follows from what we have said that the motion must be denied and it is so ordered.

*Opinion by Hoyt, Associate Justice.*
Opinion on the merit.

This was an action in admiralty, brought by the libellants against the respondent, to enforce a lien for certain materials furnished by them, and used in the putting in of the boilers and engines of the said steamer "Daisy," in the process of her construction as such steamer.

To the libel, exhibited therein, the respondent and claimants filed their exception and answer, and testimony was taken to show the circumstances under which such materials were furnished, and the only question of fact, which is made in the case, is as to whether the said materials were furnished at the request of the owners of said steamer, or their agents, or at the request of one J. C. Fox, who had a contract for the furnishing and put-

ting in of the machinery, in the construction of which the materials furnished by libellants were used.

The conclusion to which we have come, as to the law of this case, makes it unnecessary for us to decide this question so far as the decision of this case is concerned, but in view of the fact that the discussion of an important point of law, raised in the case, was made dependent upon the above stated question of fact, we have thought it best to decide it, and are of the opinion that, it appearing clearly that said Fox had a contract for the furnishing of the machinery, in the construction of which the materials of libellants were used, and that said libellants had notice thereof, and it not appearing that they were ever authorized by the owners of said steamer, or their agents, to furnish said materials, that it follows in contemplation of law that such materials were furnished at the request of said contractor Fox, and the fact that they were, without authority, charged to the steamer, instead of to Fox, could not change the legal liabilities of the parties.

Upon the facts above stated, two questions of law have been urged by the counsel for claimants, as conclusive against the right of libellants to maintain their action.

1.   That the court had no jurisdiction of the subject matter of the suit; and

2.   That the materials, having been furnished to the contractor, and by him used in the performance of his contract with the owners of the steamer, the libellants, as to the said steamer and her owners, stand in the relation of sub-contractors, and therefore have no lien upon said steamer, under the provisions of the laws of this Territory relating thereto.

The first point was not argued in the Court below, but as it goes to the jurisdiction of the court, over the subject matter of the action, it could not be waived, and if well taken must be fatal to libellant's claim, whenever brought to the attention of the court; we therefore proceed to consider it.   Was the contract for putting in said machinery a maritime one, within the meaning of the law, giving Courts of Admiralty the right to enforce such contracts by proceedings *in rem*?

11

The answer to this question must, in our opinion, turn upon the fact, as to whether the putting in of said machinery was a part of the construction of said steamer, as a completed vessel, or was she a completed vessel without the machinery in question; for if the materials were used in the construction of the steamer, then, under the well-settled rule, as declared by the Supreme Court of the United States, the contract for the furnishing thereof was not a maritime one, and an action in Admiralty *in rem* would not lie to enforce a lien therefor. *People's Ferry Company* v. *Beers, et al.*, 20 Howard, 399: *Roach, et al.*, v. *Chapman, et al.*, 22 Howard, 129.

Was the steamer "Daisy" a completed vessel at the time the said machinery was put into her? We think not, for at the time the contract with Fox was made, under which said machinery was furnished, she was, if in existence at all, in existence only as an incomplete hull on the ways, and therefore said contract was within the most restricted construction of the case of *Roach, et al.* v. *Chapman, et al.*, above cited, a contract for the construction of the vessel, and therefore not maritime. We, however, place but little stress upon the fact that, at the time of the making of the contract, the vessel had not yet been launched, as we do not think that the learned Judge, who pronounced the opinion of the Court, in the case of the *People's Ferry Company* v. *Beers, et al.*, above referred to, could have intended, by stating as one of the reasons why the contract in that case was not maritime, that "It was a contract made on land to be performed on land," thereby to make that fact the leading one in deciding that the contract in said case was non-maritime. For if the location of the hull, whether on land or water, was to be decisive as to the character of the contract, it would follow that a contract made one day would be non-maritime, which, if made the next day, in exactly the same terms, and applying to the same vessel would be maritime. A contract not maritime would, without any change in its terms or conditions, be changed to a maritime one, by the moving of the hull, upon which such contract was to take effect, the distance of a few hundred feet. Work, which if done one day would entitle to a

lien in admiralty, would, if done a day earlier, fail to create such lien. Such a construction does not seem to us reasonable, and we do not think that the opinion, taken as a whole, warrants the conclusion that the Court so held.

In our opinion, the material question is this, were the materials used in the construction of a part of the vessel necessary to her practicable use, as a vessel for the purposes for which she was intended?

Was she so far the finished creature of her designer as to be reasonably adapted to the use for which she was intended?

If she was so far finished, then anything further done upon her would be maritime in its nature, but everything done before such a degree of completion had been reached, would be non-maritime in its nature. Applying these rules to the case at bar, and it becomes evident that it is immaterial as to whether we consider the contract as having been made at the date of the contract with Fox, or at the time when the materials actually went into the steamer, as the machinery, in the construction of which said materials were used, was clearly necessary for the practicable use of the vessel, for the purposes for which she was intended and adapted. Beside libellants have set out in their libel that said materials were used in the *building*, equipping and furnishing of said steamer, without stating what part of said materials were used for each of said purposes, and therefore for the purposes of this question, said libel must be construed as though the entire claim was for the *building* of said steamer.

It follows that, in our opinion, the contract, in question, was not a maritime one, and that a Court of Admiralty had no jurisdiction *in rem*, to enforce the same.

But counsel for libellants urge that, even if the action cannot be sustained as a suit in Admiralty, yet, under the Territorial Statute, a proceeding *in rem* was authorized, and that the action ought to be sustained thereunder; but with this claim we cannot agree, as we doubt the power of the Legislature to provide for the proceedings had in this action, and are of the opinion, that if it has such power, it has never sufficiently exer-

cised the same, to justify us in upholding the proceedings had herein, as a proper exercise of the authority of the District Court, in its capacity, as a Territorial Court.

The Court below, then, had no jurisdiction of the subject matter of this action. This is all we need say, in determining the case at bar, but for the reason already stated, and for the further reason, that the same has been fully argued by able counsel, we think it our duty to decide the other question of law, made as above stated upon the hearing herein. Under the lien law of this Territory, has a sub-contractor a lien upon a vessel for material furnished by him, to the contractors and used in the construction of the vessel?

It is a well settled rule, in the construction of lien laws, that the Legislature will not be presumed to have intended to provide for the claims of those having no privity with the owners of the property, against which an enforcement of the lien is sought, unless they have made use of language from which their intention, to have so extended the law, as to cover such claims, is clearly manifest. See Phillips on Mechanics' Liens, Sec. 45, and cases therein cited.

Does the language used in the law of this Territory, relating thereto, clearly show that the Legislature intended thereby to provide for a lien in favor of a sub-contractor who, without any privity with the owners thereof, furnished materials for the construction of a vessel?

Such an intention does not appear, from a literal reading of the Statute, as it, in terms, only gives a lien to the one who furnishes the materials, and the contractor is the one who, in contemplation of the law, furnishes the materials, and not the sub-contractor, of whom he may have procured the same.

Nor is it reasonable, to so extend the letter of the Statute, as to cover such cases, for, if the sub-contractor is said to have furnished to the vessel, the materials put in by the contractor, then the person, of whom such sub-contractor procured them, may likewise be said to have so furnished them, and as all liens created upon vessels, remain in force for the period of three years, without any notice thereof being required, it would fol-

low, that there might be double or triple liens upon the vessel, for the same articles, and these several liens could be allowed to remain dormant, the existence thereof entirely unknown to the owners of the vessel, until they were enforced, one after the other, at any time within the said three years. Not only would such a construction be unreasonable, but the law, so construed, would be susceptible of working great injustice, and would tend greatly to discourage the industry of ship-building in this Territory, and therefore, not only should the language of the Statute be not extended so as to cover the claim of a sub-contractor, but should, if necessary, be very much restricted before being interpreted as the expression of an intention, on the part of the Legislature, to enact a law which would lead to such injustice and hardship as might follow the enforcement of this law thus construed. But we have seen that we can give to each word of the Statute its ordinary and full meaning, without holding that the claims of sub-contractors are included therein, and, in our opinion, it must be so construed and that, therefore, no lien exists in favor of a sub-contractor for materials furnished by him to the contractor, for use in the construction of a vessel. This construction has further sanction, in the fact that the legislature have, in the chapters of the lien law, which provide for liens upon other species of property, in express terms, carefully protected the claims of sub-contractors, as such, and have provided for the enforcement of such claims, in such a way as to lead to the least possible inconvenience to the owners of such property.

It follows, from the above conclusions, that had the Court below possessed jurisdiction of the subject matter, its decree would be affirmed here, but as it had no such jurisdiction, there must be a decree entered here, dismissing the libel, with costs of both courts against the libellants.

Motion to retax costs.

*Opinion by Greene, Chief Justice.*

*Resolved*, That it is the intent of §823 of the Revised Statutes of the United States, that recourse to the nation for judicial relief should be under a uniform tariff of fees through-

out the entire territory of the United States; and that recourse to the Territorial courts in their exercise of the same jurisdiction as circuit and district courts of the United States is recourse to the nation through organs constituted to act in its behalf. And that, therefore, that section and the sections following, having specifically provided what the *per folium* fee shall be, in admiralty causes in the Circuit and District Courts of the United States, and in absence of other provision by law what it shall be in the territories, and having in the Organic Act given the Territorial Legislature a general power only, to legislate, and legislate solely on rightful subjects, not inconsistent with the laws of the United States, the *per folium* fee granted by the United States fee bill in these sections is the only one that can be taxed.

Motion granted.